**I. Walton BADER, Appellant,**

v.

**Richard Y. FISHER, Donald E. Runge, Sydney B. Lilly, Walter E. Schaub, H.J. Mark Markarian, Harold Sampson, Joseph J. Lickteig, Mark A. Waldron, Jr., Scot Lad Foods, Inc., and Farm House Foods Corporation, Defendants Below, Appellees.**

Supreme Court of Delaware.

Submitted: Dec. 17, 1985.

Decided: Feb. 13, 1986.

Before CHRISTIE, C.J., McNEILLY and MOORE, JJ.

McNEILLY, Justice:

This appeal is from the July 1, 1985 Order and Opinion of the Court of Chancery setting the amount of attorneys' fees and expenses to be paid by appellant I. Walton Bader, counsel for plaintiffs below, pursuant to the February 11, 1983 and June 11, 1984 Orders of the Court of Chancery, which imposed sanctions upon Mr. Bader for repeated failures to make and participate in discovery in the underlying stockholders' derivative suit,[1] which the Court of Chancery dismissed for failure to comply with the demand requirements of Chancery Court Rule 23.1. We affirmed that dismissal. We now address the appropriateness of the sanctions and award of attorneys' fees and expenses to defendants imposed on plaintiffs' counsel by the February 11, 1983 and June 11, 1984 Orders.

## I

### A.

The first motion for sanctions by defendants involved the deposition of plaintiff Hjalmar S. Sundin ("Sundin"). Defendants first noticed Sundin's deposition for November 16, 1982 and, following his failure to appear, renoticed his deposition for December 9, 1982. On December 8, 1982, Mr. Bader filed a motion for a protective order on the basis that the renoticed date was inconvenient. Following a conference with the Court of Chancery, the parties agreed that Sundin's deposition would take place on January 12, 1983. Sundin appeared on that date, but did not produce any documents in his possession called for in the document request attached to the notice of deposition. Sundin testified that he never saw a copy of the notice or document request and that he did have responsive documents in his possession. The deposition

Edward T. Ciconte of D'Angelo & Ciconte, Wilmington, for appellant.

I. Walton Bader (argued) of Bader & Bader, White Plains, N.Y., pro se.

R. Franklin Balotti and Samuel A. Nolen of Richards, Layton & Finger, Roderick R. McKelvie of Ashby, McKelvie & Geddes, Wilmington, and Gary D. Friedman (argued) of Arvey, Hodes, Costello & Burman, Chicago, Ill., of counsel, for defendants below, appellees.

---

1. Mr. Bader is a member of the New York Bar and was admitted *pro hac vice* in the underlying action, originally captioned as *Hjalmar S. Sun-* *din, et al. v. Richard Y. Fisher, et al.,* Del.Ch., C.A. No. 6918 (Berger, V.C.) (July 1, 1985). Mr. Bader is acting as *pro se* appellant here.

was adjourned and, by agreement of the parties, scheduled to resume on January 21, 1983.

On January 18, 1983, Mr. Bader filed his second motion for a protective order, seeking, *inter alia*, limitations on the scope of the document request and of deposition questioning. He sought no postponement of Sundin's January 21st deposition. Nevertheless, Sundin did not appear on that day. In addition, when defendants renoticed the depositions of the other plaintiffs on January 20, 1983, Mr. Bader again responded with a motion for a protective order.

On February 3, 1983, the individual defendants filed their first motion for sanctions pursuant to Chancery Court Rule 37. On February 11, 1983, after a hearing, the Court of Chancery granted defendants' motion and denied Mr. Bader's motions for protective orders.

### B.

Defendants' second motion for sanctions was filed in response to the repeated failures of plaintiff David Smith ("Smith") to attend his deposition.[2] Smith's deposition was originally noticed to take place on January 11, 1983. Following the first sanctions order of February 11, 1983, the deposition was renoticed for March 7, 1983. This meeting was again postponed while Mr. Bader determined the identities of the plaintiffs remaining after virtually all of the original plaintiffs in the underlying derivative suit sold their shares of defendant Scot Lad Foods, Inc.

On July 12, 1983, Mr. Bader filed a motion for a protective order disputing defendants' contention that, pursuant to the parties' prior agreement, Smith should be deposed on July 15th, and requesting that the deposition be held instead on July 25th. On July 14, 1983, the Court of Chancery ordered Smith to appear for his deposition on July 25, 1983, a date represented by Mr. Bader to be convenient. On July 21st, Mr.

Bader filed yet another motion for a protective order, seeking a postponement of Smith's deposition due to scheduling conflicts. The Court denied that motion the same day it was filed. The next day Mr. Bader advised counsel for defendants that Smith would not appear on July 25th because he was required to serve on a grand jury in North Carolina.

On October 19, 1983, the Court ordered Smith to appear for his deposition on October 31, 1983, again, a date represented by Mr. Bader to be convenient. However, on October 26th, Mr. Bader informed the Court that some adjustment to the October 31st deposition date might be necessary because of Mr. Bader's other commitments. The parties were notified on the same day that the Court declined to modify the order. Smith did not appear for his deposition on October 31st.

Counsel then agreed on November 7, 1983 that Smith would appear for his deposition on November 11, 1983. Mr. Bader appeared in Chicago for the deposition on the 11th but Smith did not. Mr. Bader was surprised at his client's absence because he had called Smith the night before the scheduled deposition, had told him there were plane reservations waiting for him, and had advised him that they would meet at the airport in Chicago. Smith testified that he had thought Mr. Bader was mistaken when he indicated that the deposition was to be taken on Friday, November 11, 1983, inasmuch as November 11th was a holiday. Smith assumed, instead, that the deposition was to be taken on the following Friday. In fact, Smith had other commitments on November 11th. The evidence established that Mr. Bader never gave Smith written notice of his obligation to appear in Chicago on November 11th.

In response to Smith's continued failure to attend his deposition, defendants filed their second motion for sanctions. On June 11, 1984, after a hearing, the Court of

---

**2.** The defendants also complained of difficulties encountered in deposing Robert C. King, a non-party witness. Defendants' motion as to Mr. King, however, was eventually denied.

Chancery granted defendants' motion, ordering Mr. Bader to pay expenses and reasonable attorneys' fees incurred by defendants in appearing at the scheduled depositions and in preparing the motion for sanctions and appearing at the two hearings in connection therewith.

### C.

Upon request of the Court of Chancery, the parties submitted affidavits and counteraffidavits as to the amount of sanctions to be awarded pursuant to the February 11, 1983 and June 11, 1984 Orders. On July 1, 1985, the Court issued an Order and Opinion awarding defendants a total of $10,420.00 in attorneys' fees and expenses.

In their affidavits in support of the first sanctions order, defendants sought a total of $11,594.18 in attorneys' fees and $874.06 in expenses. The major portion of the request for attorneys' fees reflected the time spent by four attorneys preparing the motion for sanctions and supporting memorandum—a total of over 70 hours. Mr. Bader contended that the number of hours spent and the hourly rates applied were excessive. He objected to the claim for attorneys' fees for time spent preparing for and beginning Sundin's deposition because that activity pre-dated the motion for sanctions and could not be included in the sanctions award. He also objected to the claim for Chicago counsel's travel expenses to Delaware, arguing that Delaware counsel could have presented the motion for sanctions without Chicago counsel also being present.

The Court of Chancery awarded defendants $3,170.00 with respect to their first motion. In reaching that result, the Court: (1) deleted the time spent preparing for Sundin's deposition; (2) significantly reduced the time spent preparing the motion for sanctions; and (3) included in full the expenses requested by defendants. The Court stated it was intentionally being le-

nient in determining reasonable attorneys' fees, because this was defendants' first motion and Mr. Bader might have expected only a nominal award.

In their affidavits in support of the second sanctions order, defendants sought a total of $15,117.11 in attorneys' fees and $2,775.69 in expenses. As with the first motion, the major portion of attorneys' fees requested related to the preparation of the motion for sanctions. Defendants also sought fees for time spent preparing for Smith's deposition and for Chicago counsel's time in Wilmington for the two hearings on the motion. The requested expenses included Chicago counsel's travel expenses to Wilmington for the two hearings and for one of the court-ordered depositions that Smith failed to attend. Mr. Bader's objections to the defendants' affidavits paralleled those made in connection with the first motion.

The Court awarded defendants $7,250.00 [3] in expenses and attorneys' fees with respect to their second motion. In so doing, the Court deleted the time spent preparing for the Smith deposition, and it deleted a portion of the time spent and expenses incurred in preparing the second motion for sanctions and appearing at one of the sanctions hearings to reflect that defendants' motion for sanctions with respect to the non-party witness, Mr. King, had been denied. While noting this second award was also somewhat lenient, the Court stated it had made fewer reductions than in the first award because Mr. Bader had been put on notice after the first sanctions order that the Court would not tolerate abuses of the discovery process.

### II

Defendants now argue before this Court that the granting of their first motion for sanctions was entirely justified on two separate grounds. First, defendants contend, Chancery Court Rules 26(c) [4] and 37(a)(4) [5]

---

**3.** Smith was ordered to pay $100.00. Mr. Bader was ordered to pay the balance.

**4.** Rule 26(c) provides in pertinent part:

**5.** See note 5 on page 1095.

make an award of the reasonable attorneys' fees and expenses of the defending party mandatory upon the denial of a motion for a protective order unless the court finds that the motion was substantially justified or that other circumstances make an award of expenses unjust. Having found no such justification, defendants argue, the Court of Chancery's decision to award attorneys' fees and expenses was both warranted and required under Rule 37(a)(4).

Second, defendants contend the award was further warranted under Chancery Court Rule 37(d),[6] based upon Sundin's failure to produce documents as requested in defendants' notice of deposition at the time his deposition originally commenced,[7] and the failure of Mr. Bader to produce Sundin for the continuation of his deposition on January 21, 1983.

Defendants contend that the granting of their second motion for sanctions was also justified, again, on two grounds. First, they argue that Mr. Bader's numerous failures to produce David Smith for his deposition fall squarely within the provisions of Chancery Court Rule 37(d). Second, de-

fendants contend that Mr. Bader's failures to comply with the orders of the Court of Chancery setting dates for Smith's deposition come within the provisions of Chancery Court Rule 37(b).[8] They argue that Mr. Bader failed to prove substantial justification for either violation and that therefore the imposition of attorneys' fees and expenses was mandatory.

Finally, defendants reject Mr. Bader's contention that the Court of Chancery's award of expenses and attorneys' fees was excessive and an abuse of discretion. They note that they "were put to great expense by Mr. Bader's dilatory and unjustifiable tactics," and that the Court had been lenient in setting the award amount, as the Court itself had suggested.

### III.

We must now determine whether the Court of Chancery abused its discretion in its awarding of sanctions against Mr. Bader pursuant to Chancery Court Rule 37. *See Pencader Associates, Inc. v. Glasgow Trust,* Del.Supr., 446 A.2d 1097, 1101

---

If the motion for a protective order is denied in whole or in part, the Court may, on such terms and conditions as are just, order that any party or person provide or permit discovery. The provisions of Rule 37(a)(4) apply to the award of expenses incurred in relation to the motion.

**5.** Rule 37(a)(4) provides in pertinent part:
If the motion is denied, the Court shall, after opportunity for hearing, require the moving party or the attorney advising the motion or both of them to pay to the party or deponent who opposed the motion the reasonable expenses incurred in opposing the motion, including attorney's fees, unless the Court finds that the making of the motion was substantially justified or that other circumstances make an award of expenses unjust.

**6.** Rule 37(d) provides in pertinent part:
If a party ... fails (1) to appear before the officer who is to take his deposition, after being served with a proper notice, or ... (3) to serve a written response to a request for inspection submitted under Rule 34, after proper service of the request, the Court in which the action is pending on motion may make such orders in regard to the failure as

are just.... In lieu of any order or in addition thereto, the Court shall require the party failing to act or the attorney advising him or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the Court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.

**7.** Under Chancery Court Rule 30(b)(5), the procedure of Rule 34 for the production of documents also applies to the inclusion of a request for production in a notice of deposition.

**8.** Rule 37(b) provides in pertinent part:
If a party ... fails to obey an order to provide or permit discovery ..., the Court may make such orders in regard to the failure as are just
....
In lieu of any of the foregoing orders or in addition thereto, the Court shall require the party failing to obey the order or the attorney advising him or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the Court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.

(1982); *Rittenhouse Associates, Inc. v. Frederic A. Potts & Co.*, Del.Supr., 382 A.2d 235, 236 (1977).

Pursuant to Chancery Court Rule 37, when a party fails to comply with discovery orders of the Court or otherwise engages in discovery abuses, the award of attorneys' fees and expenses to the opposing party is mandatory, absent a showing by the wrongdoer that his actions were substantially justified or that other circumstances make the award unjust. *Wileman v. Signal Finance Corporation*, Del.Supr., 385 A.2d 689, 690 (1978). Rule 37 was revised in 1970 in order to encourage such sanctions where appropriate. The wrongdoer has the burden to show that his actions were, in fact, justified or that other circumstances make the award unjust. *Id.* at 690–91.

■ Mr. Bader has failed to meet his burden to show that his violations of various subsections of Rule 37 were substantially justified or that the award is otherwise unjust. The assessment of attorneys' fees and expenses against him, therefore, was proper and fully supported by the record. In addition, in light of both the numerous abuses of the discovery process by Mr. Bader and the Court of Chancery's lenient treatment in setting the amount of sanctions, we find the award was reasonable under the circumstances. Clearly, there was no abuse of discretion. As we stated in *Holt v. Holt*, Del.Supr., 472 A.2d 820 (1984):

> Trial courts should be diligent in the imposition of sanctions upon a party who refuses to comply with discovery orders, not just to penalize those whose conduct warrants such sanctions, but to deter those who may be tempted to abuse the legal system by their irresponsible conduct. Discovery abuse has no place in our courts, and the protection of litigants, the public, and the bar demands nothing less than that our trial courts be diligent in promptly and effectively taking corrective action to "secure the just,

speedy and inexpensive determination of *every* proceeding" before them.

*Id.* at 824 (citation omitted) (quoting Superior Court Civil Rule 1) (emphasis in original). Moreover, as we recently ruled in *Eberly v. Eberly*, Del.Supr., 489 A.2d 433, 449 (1985), "[a] court has the inherent power to assess attorney's fees against counsel when that lawyer has acted in bad faith or wilfully abused the judicial process." *See Roadway Express, Inc. v. Piper*, 447 U.S. 752, 767, 100 S.Ct. 2455, 2464, 65 L.Ed.2d 488 (1980).

\*      \*      \*      \*      \*      \*

AFFIRMED.