COURT OF CHANCERY
OF THE
STATE OF DELAWARE

KATHALEEN ST. JUDE MCCORMICK
CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

June 9, 2025

Philip Trainer, Jr.
Samuel M. Gross
ASHBY & GEDDES
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899

Matthew F. Davis
Laura G. Readinger
Lilianna Anh P. Townsend
Ryan M. Ellingson
POTTER ANDERSON & CORROON LLP
1313 N. Market Street
Hercules Plaza, 6th Floor
Wilmington, DE 19801

Re:     *Infab Co. Inc, et al. v. Donald J. Cusick et al.,*
        C.A. No. 2022-0050-KSJM

Dear Counsel:

This letter decision addresses the defendants' March 8, 2024 motion for sanctions, which the court grants in part.

## I.     FACTUAL BACKGROUND

This court assumes that the reader is familiar with the background of this action and addresses only those facts relevant to the motion for sanctions.[1]

On October 18, 2021, Infab circulated a litigation hold to all Infab employees (the "Litigation Hold").[2]   On June 16, 2022, the court entered a Stipulated and Proposed Order Governing Discovery of Documents and Electronically Stored Information (the "ESI Order"), which required Plaintiffs to preserve and collect the

---

[1] C.A. No. 2022-0050-KSJM, Docket ("Dkt.") 299 ("Defs.' Sanctions Mot."). This decision adopts the defined terms set out in the May 19, 2025 Order on the parties' cross-motions for summary judgment. *See* Dkt. 397.

[2] Dkt. 305 ("Pls.' Opposition Br."), Ex. D.

data of "[a]ll Infab employees during the relevant time period."[3]  It also required

Plaintiffs to conduct forensic imaging and produce any responsive communications.[4]

Plaintiffs decided whether to conduct forensic imaging by asking employees to

"review[] their phones to confirm that there were no relevant text messages."[5]

As required by the ESI Order, on November 10, 2022, Plaintiffs provided a list

of custodians from which they collected ESI.[6]  The list excluded Infab officer Daren

Dickerson and HKW partners Kent Robinson and John Carsello.  Dickerson initiated

and oversaw the investigation that would eventually uncover Cusick's alleged fraud

in the summer of 2021.[7]  Dickerson reported to Robinson and Carsello in their

capacities as Infab directors over the course of the investigation.[8]  Defendants' prior

counsel did not object to the omissions from the list of custodians.[9]

Following a change in defense counsel, in March 2023, Defendants began

inquiring into Plaintiffs' efforts to preserve and collect ESI from Dickerson, Robinson,

and Carsello.[10]  In June 2023, Defendants requested confirmation that responsive

---

[3] *See* Dkt. 48 (Order entering Stipulation and Proposed Order Governing Discovery of Documents and Electronically Stored Information) ¶ B1.

[4] *Id.* ¶ D12.

[5] Defs.' Sanctions Mot., Ex. F at 11.

[6] *Id.* at 33–34.

[7] Pls.' Opposition Br. ¶¶ 3, 24–25, 37.

[8] Defs.' Sanctions Mot., Ex. A ("Dickerson Dep. Tr.") at 51:10–52:13, 53:4–6, 65:12–22, 145:16–20.

[9] *Id.*, Ex. F at 32–33.

[10] *Id.* at 26.

texts had been preserved and collected from all three.[11]  Plaintiffs responded on July 18, 2023, that Dickerson, Robinson, and Carsello had conducted self-reviews and had not located any relevant messages.[12]  They further stated that HKW policy discouraged substantive use of text messaging.[13]

Deposition testimony proved Plaintiffs' representations false.  Dickerson's testimony was the most revealing.  Dickerson testified that he had used text messages extensively during the internal investigation into Cusick's conduct, and that he "consciously avoided email" when communicating with Robinson and Carsello.[14]  Also, communications recovered from other Infab employees' phones revealed that Dickerson regularly used text messaging to communicate substantively about business matters, including the investigation into Cusick.[15]  Dickerson testified that he exchanged text messages during the investigation period with an accountant at Infab's outside auditor.[16] Defendants also deposed Mike Wipper, a representative of the firm that conducted the audit into the alleged fraud, who testified that he exchanged "ten plus" texts per day with Dickerson during that same period.[17]  But Dickerson never disabled his phone's auto-delete function, and his phone

---

[11] *Id.* at 17–18.

[12] *Id.* at 9–11, 19.

[13] *Id.* at 16.

[14] *See* Dickerson Dep. Tr. at 41:3–42:20.

[15] Dkt. 307 (Defs.' Reply), Ex. J at 2–15; *id.*, Ex. L at 6–10.

[16] Dickerson Dep. Tr. at 42:11–14.

[17] Defs.' Sanctions Mot., Ex. S (Wipper Dep. Tr.) at 162:21–163:8.

automatically deleted texts until May 2023, nineteen months after Infab issued the Litigation Hold.[18] Plaintiffs ultimately imaged Dickerson's phone but, as they concede, the deleted texts could not be recovered.[19]

Robinson and Carsello also testified that they exchanged text messages on relevant topics. Robinson testified that he in fact deleted text messages relating to the investigation and that counsel never asked him to check his phone for responsive messages.[20] Plaintiffs ultimately imaged Robinson's phone, but they concede the deleted texts also could not be recovered.[21] Carsello testified that he limited text conversations to logistical issues and denied texting on substantive business discussions.[22] Carsello resigned after the Litigation Hold but the Company did not image Carsello's devices before his resignation.[23]

On March 8, 2024, Defendants filed a Motion for Sanctions under Court of Chancery Rule 37(e), seeking an adverse inference and an award of fees and costs based on Plaintiffs' alleged spoliation of text messages.[24] The parties completed briefing on March 29, 2024.[25] At a May 16, 2024 omnibus hearing on discovery

---

[18] *Id.* at 43:1–3; Defs.' Sanctions Mot., Ex. F at 19.

[19] Pls.' Opposition Br. ¶ 17; *see also* Defs.' Sanctions Mot., Ex. F. at 19; Dickerson Dep. Tr. at 43:1–19.

[20] Defs.' Sanctions Mot., Ex. B ("Robinson Dep. Tr.") at 57:4–12, 58:1–8.

[21] *Id.* at 57:18–58:8; Pls.' Opposition Br. ¶ 18.

[22] Defs.' Sanctions Mot.*,* Ex. C (Carsello Dep. Tr.) at 31:16–32:3.

[23] *Id.* at 35:10–17.

[24] Dkt. 299.

[25] Dkt. 307.

motions, Vice Chancellor Glasscock addressed document discovery as to Carsello and directed Defendants to subpoena Carsello and supplement the record with any text messages produced.[26]

Defendants served a subpoena on May 22, instructing Carsello to produce all text messages relating to the subject matters of this litigation.[27] In response, Carsello agreed to image his phone, but only agreed to produce any messages between him and Defendants' requested recipients from the period between December 1, 2019 and January 1, 2022.[28] Carsello produced two spreadsheets containing text messages.[29] On August 9, 2024, Defendants filed a supplemental brief, and Plaintiffs responded on August 15.[30] After Vice Chancellor Glasscock's retirement, I reassigned this action to myself. I heard argument on the Motion for Sanctions on January 10, 2025.[31]

## II.    LEGAL ANALYSIS

This decision first addresses the question of spoliation and then moves to discussing appropriate sanctions.

### A.    Spoliation

Defendants argue that Plaintiffs failed to take reasonable steps to preserve and collect text messages from three key custodians central to the internal

---

[26] Dkt. 323 (5/16/24 Hr'g Tr.) at 55:3–22.

[27] Dkt. 322.

[28] Dkt. 369 ("Pls.' Supplemental Br."), Ex. I at 1–3.

[29] *Id.*, Ex. L; Dkt. 364 ("Defs.' Supplemental Br."), Ex. U.

[30] Dkts. 364, 369.

[31] Dkt. 386.

investigation of Cusick. They contend that Dickerson failed to disable his phone's auto-delete functions after receiving the Litigation Hold, Robinson admitted to deleting messages, and Carsello selectively deleted relevant text messages and resisted forensic imaging efforts. They argue that these omissions constitute spoliation.[32]

"Spoliation is the destruction or significant alteration of evidence, the failure to preserve evidence properly for another's use, or the improper concealment of evidence."[33] Under Rule 37(e), there has been a failure to preserve ESI if "(i) [there was] a duty to preserve the ESI, (ii) the ESI is lost, (iii) the loss is attributable to the . . . failure to take reasonable steps to preserve the ESI, and (iv) the requesting party suffered prejudice."[34]

Parties who are involved in litigation or reasonably expect to be involved in litigation have "an affirmative duty to preserve potentially relevant evidence."[35] The duty to preserve begins as "soon as the party either actually anticipates litigation or reasonably should have anticipated litigation."[36] Whether a party "reasonably should have anticipated litigation" is an objective standard: it "must be viewed from the

---

[32] Defs.' Sanctions Mot. ¶ 22.

[33] *Goldstein v. Denner*, 310 A.3d 548, 567 (Del. Ch. Jan. 26, 2024).

[34] *Id.* at 557*; see* Ct. Ch. R. 37(e).

[35] *Shawe v. Elting,* 157 A.3d 142, 150 (Del. 2017) (citing *Beard Rsch., Inc. v. Kates,* 981 A.2d 1175, 1185 (Del. Ch. 2009)).

[36] *Goldstein*, 310 A.3d at 571 (internal citations omitted).

perspective of the party in control of the evidence."[37] "A court may sanction a party who breaches this duty by destroying relevant evidence or by failing to prevent the destruction of such evidence."[38]

Under Delaware law, the party seeking sanctions for spoliation bears the initial burden of proof to show that relevant evidence was lost and that its loss caused prejudice.[39] "The burden shifts to the party who lost the information to demonstrate that the information could not have been relevant, would not have been admissible or potentially have led to the discovery of admissible evidence, or otherwise could not have been used by the requesting party to its advantage."[40]

Defendants have demonstrated that Plaintiffs failed to take reasonable steps to preserve relevant ESI. Plaintiffs were on notice of their obligation to preserve evidence related to the earnout dispute at least as of October 2021, when Defendants advised Plaintiffs of potential litigation.[41] They did not take reasonable measures to preserve evidence. They instead relied on Infab employees' self-certifications and an HKW texting policy.

---

[37] *Id.* at 572 (internal citations omitted).

[38] *Beard Rsch.*, 981 A.2d at 1185.

[39] *Goldstein,* 310 A.3d at 584.

[40] *Id.*

[41] *See* Defs.' Sanctions Mot., Ex. E at 3 (Letter dated October 14, 2021 from Cusick's counsel advising Infab to preserve "documents, emails and other evidence" related to Infab's 2020 earn-out dispute with Cusick in anticipation of litigation).

This court deemed similar measures insufficient in *Goldstein v. Denner*.[42] There, the plaintiff, a hedge fund, relied on its employees' representations rather than performing collections or disabling auto-delete.[43] Vice Chancellor Laster held that this failure was unreasonable and sanctionable, emphasizing that the duty to preserve evidence "extends to those employees likely to have relevant information—the key players in the case."[44] The Vice Chancellor explained that issuing a litigation hold is not enough; parties must follow through by suspending deletion policies and ensuring compliance by key custodians.[45] Here, Plaintiffs did not ensure any employees' texting practices complied with the ESI Order until months after the Litigation Hold and after depositions revealed losses. These oversights are inexcusable.[46]

Defendants have proven that Plaintiffs' failure to take reasonable steps to preserve ESI resulted in spoliation of ESI, at least as to Dickerson and Robinson.

---

[42] *Goldstein v. Denner*, 310 A.3d 548 (Del. Ch. 2024).

[43] *Id.* at 580–81.

[44] *Id.* at 572–73. In *Goldstein,* "key players" included the hedge fund's principal, general counsel, and head trader. The head trader admitted that, despite receiving a litigation hold, he retained a 30-day auto-delete setting on his iPhone and never changed it. *Id.* at 577–79.

[45] *Id*.

[46] *See, e.g., In re Facebook, Inc. Deriv. Litig.*, 2025 WL 262194, at *9–10 (Del. Ch. Jan. 21, 2025) (finding unreasonable preservation efforts where company failed to follow up with custodians to confirm they disabled auto-delete functions, despite legal hold).

Plaintiffs concede that most texts between Robinson and Dickerson during the investigation period were irretrievably deleted.[47]

Defendants have not shown that Plaintiffs' failure to preserve Carsello's ESI before his departure resulted in spoliation. Defendants argue that Carsello resisted efforts to image his phone, but they overstate what happened. Carsello objected to the scope of the Defendants' subpoena but did not refuse to image his phone.[48] He timely complied with a targeted request to identify and produce messages with other Infab employees and Wipper between December 2019 and January 2022.[49] Defendants also argue that Carsello only produced texts with Dickerson from October 2021, the tail end of the period, even though he produced older text conversations with others.[50] But Plaintiffs demonstrated that Carsello produced texts with Dickerson from as early as May 2021 and that the images that Defendants identified as missing were included in a prior production.[51]

Plaintiffs advance other arguments against a finding of spoliation, but none are persuasive. They argue that sanctions are not appropriate because Defendants

---

[47] Pls.' Opposition Br. ¶ 18 (citing Robinson Dep. Tr. at 57:18–58:8).

[48] Pls.' Supplemental Br., Ex. I at 1, 4.

[49] *Id.*

[50] Defs.' Supplemental Br. ¶ 13.

[51] Pls.' Supplemental Br., Ex. J; Defs.' Supplemental Br., Ex. T at 6–7. Also, Defendants' "selective deletion" theory is not supported by the documents they cite. They identify a single reference to an unresponsive message that was not produced and note the lack of responsive messages. *See* Defs.' Supplemental Br. ¶ 13 (citing *id.*, Ex. V at 2).

cannot show Dickerson or Robinson acted with culpability or malicious intent, that Cusick was not prejudiced because the messages were likely logistical, and that Defendants cannot prevail on their counterclaim, even with the requested inferences.[52] None of these points convince me that the information could not have been relevant, would not have led to the discovery of admissible evidence, or could not have been used by the requesting party to its advantage.[53] If anything, Plaintiff's arguments counsel in favor of caution when selecting the appropriate form of sanction, which this decision addresses next.

### B.    Appropriate Sanctions

As sanctions, Defendants have requested adverse inferences permitting the court to presume that the missing text messages are unfavorable to Plaintiffs and reimbursement for the reasonable fees and costs.

At a minimum, Defendants are entitled to their fees and costs. "[W]hen a party fails to comply with discovery orders of the Court or otherwise engages in discovery abuses, the award of attorneys' fees and expenses to the opposing party is mandatory, absent a showing by the wrongdoer that his actions were substantially justified or that other circumstances make the award unjust."[54]

---

[52] Pls.' Opposition Br. ¶¶ 21–22, 32, 43–45.

[53] *See also Sears, Roebuck & Go. v. Midcap*, 893 A.2d 542, 552 (Del. 2006) (holding that an adverse inference instruction is proper where evidence was destroyed intentionally or recklessly and rejecting the notion that evidence of bad faith is always required).

[54] *Bay Cap. Fin., LLC v. Barnes and Noble Educ., Inc.*, 2020 WL 1527784, at *11 (Del. Ch. Mar. 30, 2020) (quoting *Bader v. Fisher*, 504 A.2d 1091, 1096 (Del. 1986)).

Defendants seek reimbursement for the attorneys' fees and expenses incurred in investigating Plaintiffs' preservation failures, litigating the Motion for Sanctions, subpoenaing Carsello, and preparing their supplemental brief.[55]  Because Defendants have not made out spoliation with respect to Carsello, they are not entitled to reimbursement for expenses related to securing his production.  They are entitled to any expenses related to investigation into Plaintiffs' other preservation failures.

Defendants might also be entitled to adverse inferences, but it is too early to tell.  "An adverse inference is appropriate where a party fails to preserve evidence while being consciously aware of a substantial and unjustifiable risk that the information will be lost, and the failure results in prejudice to the opposing party."[56]  This includes conduct such as affirmative deletion or failure to suspend automatic deletion settings after a duty to preserve has attached.[57]  The court need not find direct evidence of intent to destroy specific exculpatory evidence to enter adverse inferences.[58]  Rather, adverse inferences are appropriate where "a litigant

---

[55] Defs.' Supplemental Br. ¶¶ 18–19.

[56] *See Sears*, 893 A.2d at 552  ("An adverse inference instruction is appropriate where a litigant intentionally or recklessly destroys evidence, when it knows that the item in question is relevant to a legal dispute or it was otherwise under a legal duty to preserve the item.").

[57] *See Beard Rsch.*, 981 A.2d at 1191–94 (drawing adverse inference where spoliating party "consciously disregards" known duties to preserve evidence); *Goldstein,* 310 A.3d at 585 (imposing adverse inference where parties failed to disable auto-delete or verify compliance with hold instructions).

[58] *See Kan-Di-Ki, LLC v. Suer*, 2015 WL 4503210, at *29–30 (Del. Ch. July 22, 2015) (drawing adverse inferences where the court did not infer "bad motive" from losing a party's phone but found the party and his counsel failed to take reasonable steps "to

intentionally or recklessly destroy[ed] evidence, when [the litigant knew] that the item in question is relevant to a legal dispute or [the litigant] was otherwise under a legal duty to preserve the item."[59]

Defendants argue that Plaintiffs' conduct was at least reckless and that there are gaps in the record around an important event in the litigation—the investigation. I agree that Plaintiffs' conduct was reckless. But it is difficult to assess the breadth and prejudice of the evidentiary gap without the benefit of the full evidentiary record. The nature of the prejudice is an important consideration. Although the court "has wide latitude to fashion an appropriate remedy" for spoliation, "the remedy must be tailored to the degree of culpability of the spoliator and the prejudice suffered by the complaining party."[60] Adverse inferences are harsh sanctions—they can prove outcome determinative where there is little or no credible evidence on a topic.[61] The motion for adverse inferences, therefore, is denied without prejudice to Defendants' ability to re-raise the request in post-trial briefing.[62]

---

preserve any information that might be on his phone"); *Triton Const. Co., Inc. v. E. Shore Elec. Servs., Inc.*, 2009 WL 1387115, at \*8 (Del. Ch. May 18, 2009), *aff'd*, 988 A.2d 938 (Del. 2010) ("Delaware law requires a determination that the party acted intentionally *or recklessly* in failing to preserve the evidence.") (emphasis added).

[59] *Sears*, 893 A.2d at 552.

[60] *Beard Rsch.*, 981 A.2d at 1189–90.

[61] *Goldstein*, 310 A.3d at 586.

[62] *See Twitter Inc. v. Musk*, 2022 WL 5078278, at \*5 (Del. Ch. Oct. 5, 2022) (reserving judgment on plaintiff's motion for adverse inferences "pending post-trial briefing, when I have a fuller understanding of the record").

## III. CONCLUSION

Defendants' motion for sanctions is granted in part. They are entitled to reasonable attorneys' fees for the expenses associated with Plaintiffs' discovery failures and may raise their motion for an adverse inference in post-trial briefing.

Sincerely,

*/s/ Kathaleen St. Jude McCormick*

Chancellor

cc:    All counsel of record (by *File & ServeXpress*)