COURT OF CHANCERY
OF THE
STATE OF DELAWARE

KATHALEEN ST. JUDE MCCORMICK
CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

November 7, 2025

Thomas E. Hanson, Jr.
William J. Burton
BARNES & THORNBURG LLP
222 Delaware Avenue, Suite 1200
Wilmington, Delaware 19801

Michael C. Heyden, Jr.
GORDON REES SCULLY
MANSUKHANI, LLP
221 W. 10th Street, 4th Floor, Suite 447
Wilmington, Delaware 19801

Re: *Legent Group, LLC, et al. v. Axos Financial, Inc., et al.*,
C.A. No. 2020-0405-KSJM

Dear Counsel:

This letter[1] resolves Sellers' motion for fee-shifting sanctions due to Buyers' discovery conduct.[2] The motion is granted in part.

The court directs readers to the Post-Trial Memorandum Opinion for the factual and procedural background of this action. As noted in that decision, Clearing brought FINRA arbitration claims against Reynolds in August 2019.[3] In the arbitration, Clearing entered into a protective order with Reynolds and Spartan.[4] On May 19, 2021, Sellers served Reynolds with a subpoena for documents relating to the FINRA arbitration, including deposition transcripts, hearing transcripts, pleadings,

---

[1] This letter decision cites to: C.A. No. 2020-0405-KSJM docket entries (by docket "Dkt." number); trial exhibits (by "JX-" number); and the trial transcript, Dkts. 320–23 ("Trial Tr."). Terms not defined in this letter decision have the same meaning as in the Post-Trial Memorandum Opinion, Dkt. 370.

[2] *See* Dkt. 325 ("Pls.' Mot. for Sanctions").

[3] *See* JX-106.

[4] Dkt. 76, Ex. A.

and responses to discovery requests.[5] Sellers moved to enforce and Buyers moved to quash the subpoena.[6] Buyers argued that the protective order entered in the FINRA arbitration prevented discovery of the documents.[7] Buyers also represented to the court that they were not taking legal positions in this litigation that contradicted those in the FINRA arbitration.[8]

Based in part on Buyers' representation that the FINRA documents were confidential, the court granted the Buyers' motion to quash without prejudice to allow Sellers to reassert their motion to enforce "if the discovery record demonstrate[d] that such documents have greater significance than it [then seemed]."[9] Sellers later renewed their request for production in response to a special magistrate's discovery report.[10] The court denied the renewed request, concluding that Sellers had not shown that the FINRA documents had increased in significance.[11]

On the eve of trial, Sellers discovered that Garrabrants's testimony in the FINRA arbitration had been publicly filed as part of pending litigation in New York

---

[5] Dkt. 49, Schedule A at 11–12.

[6] Dkt. 50.

[7] Dkt. 53 ("Defs.' Mot. to Quash"); *see also* Dkt. 76.

[8] *See, e.g.*, Dkt. 103 at 51:8–11.

[9] Dkt. 113 ¶ 11(d).

[10] Dkt. 152.

[11] Dkt. 194 at 35:24–36:7.

state court.[12]  Sellers filed an emergency motion to compel on this basis.[13]  After trial

and the production of the transcripts, Sellers moved for sanctions.[14]  The court held

Sellers' request for fee-shifting in abeyance to resolve after post-trial briefing.[15]

Sellers argue that Buyers misled the court in two ways.  First, contrary to their

representations when moving to quash the subpoena, Buyers took positions in the

arbitration directly contradicting their positions in this litigation.[16]  In the FINRA

arbitration, Buyers maintained that Clearing had the ability to close Reynolds's

position on the day of the Reynolds Loss but refrained in reliance on Reynolds's

misrepresentation that he was going to close the position.[17]  In this litigation, Buyers

claimed that Clearing was left with no way to shut down Reynolds's trading.[18]

Second, Buyers told the court that the FINRA arbitration documents were

confidential, but it turns out that at least some were filed publicly.[19]

Buyers adamantly deny misleading the court concerning their representations

in the FINRA arbitration.  They do not deny that Clearing could have shut down

---

[12] Dkt. 316; Trial Tr. at 10:1–11:12.

[13] Dkt. 316.

[14] Dkt. 325.

[15] Dkt. 339 at 53:4–8.

[16] Pls.' Mot. for Sanctions ¶ 12.

[17] *See, e.g.*, JX-234 at 268:18–269:2; JX-235 at 3990:16–3991:16; JX-236 at 4204:23–4205:16.

[18] *See, e.g.*, Defs.' Pre-Trial Opening Br. at 39; Trial Tr. at 463:24–464:2 (Garrabrants).

[19] Pls.' Mot. for Sanctions ¶ 13.

Reynolds's trading by calling the market center. But they argue that without a reasonably designed risk system, Sime was put in "an impossible situation" and chose to rely on Reynolds's promise.[20] If Clearing's risk system was reasonably designed, Buyers argue, Clearing would have discovered Reynolds's trading earlier and leadership would have had clear guidance on how to respond.[21]

Buyers walked a very fine line, but a generous interpretation is that their positions in the two proceedings are not wholly inconsistent. Arguing that Sime should have never been put in a position to rely, without guidance, on Reynolds's promise is a weak but legitimate argument. Further, Buyers attempted to use a less stringent causation standard, suggesting that their goal was to allow for more than one contributing factor to the Reynolds Loss.[22] The Post-Trial Memorandum Opinion rejected many of Buyers' factual and legal arguments on this point, but that does not mean Buyers advanced them in bad faith.

Buyers' representations on the confidentiality of the FINRA documents, on the other hand, cannot be reconciled. Buyers deny that they ever represented that the FINRA arbitration transcripts were subject to a protective order. They argue that they raised this objection as to Sellers' demand for documents produced as part of the FINRA arbitration.[23] But under Buyers' new position, they would have had no

---

[20] Dkt. 330 ("Defs.' Opp. to Mot. for Sanctions") at 13–14.

[21] *Id.* at 14.

[22] *See* Defs.' Post-Trial Opening Br. at 43.

[23] Defs.' Opp. to Mot. for Sanctions at 7–8. *See, e.g.*, Defs.' Mot. to Quash ¶¶ 5–6.

objection to producing at least some of the arbitration transcripts and yet did not produce them.[24]

Moreover, before this motion for sanctions, Buyers did not distinguish between FINRA arbitration transcripts and documents produced in the FINRA arbitration in their filings with the court. In their motion to quash the subpoena, Buyers stated that this court "should grant [the] motion to quash because *the law and the protective order entered into by Reynolds* protects the FINRA arbitration materials from disclosure, and no exception applies here."[25] The motion also states:

> The parties to the FINRA arbitration have not waived their confidentiality interest in the materials designated as *confidential under the arbitration's protective order*. These materials have not been produced in this action, nor has any party *previously disclosed the transcripts, discovery requests, written responses*, and other arbitration materials the Subpoena seeks.[26]

In another paragraph:

> Both Axos Clearing LLC and Spartan Securities Group, Ltd. ("Spartan"), parties to the FINRA arbitration, objected to the production of *information designated as confidential under the FINRA protective order*. That information therefore remains confidential and not subject to disclosure. No exception exists which would justify an abrogation of the confidentiality interest which the parties to the FINRA arbitration have. For that reason, the Subpoena should be quashed for seeking disclosure of such information.[27]

---

[24] *See* Dkt. 113 ¶ 11 & n.25.

[25] Defs.' Mot. to Quash ¶ 7.

[26] *Id.* ¶ 10 (citations omitted) (emphasis added).

[27] *Id.* ¶ 11 (citations omitted) (emphasis added).

In their reply brief on the motion to quash, they stated that:

> To save resources, Defendants will not reiterate below all
> the reasons that the Subpoena should be quashed insofar
> as it seeks documents that are subject *to protective orders
> in other proceedings or otherwise protected by a
> confidentiality provision.*[28]

And further:

> In any event, the settlement communications would still be
> *confidential under FINRA's confidentiality provisions
> and/or the protective order* in the FINRA Arbitration.[29]

Buyers repeated the strategy of arguing blanket generalizations about the FINRA documents when Sellers requested the arbitration transcripts for a second time. In their October 2022 opposition to Sellers' motion to compel production of the transcripts, Buyers discuss the "confidential nature" of FINRA arbitrations and state that "confidential arbitration materials should not be disclosed as allowing third parties *to abrogate bargained for confidentiality agreements* . . . would undeniably discourage future parties from engaging in arbitration[.]"[30]

Throughout this litigation, Buyers referred to the FINRA arbitration documents as one category and argued as such. They referred generally to protective orders and "confidentiality provisions" and argued that all FINRA arbitration documents are subject to one or the other, without distinction.

---

[28] Dkt. 86 ¶ 1 (emphasis added).

[29] *Id.* ¶ 13 (emphasis added).

[30] Dkt. 150, Ex. 2 at 11 (citation modified) (emphasis added).

Buyers' arguments in motion practice concerning the FINRA documents elided key distinctions on which they now rely in a way that misled the court.

"[W]hen a party fails to comply with discovery orders of the Court or otherwise engages in discovery abuses, the award of attorneys' fees and expenses to the opposing party is mandatory, absent a showing by the wrongdoer that his actions were substantially justified or that other circumstances make the award unjust."[31] Buyers described the FINRA arbitration transcripts and documents produced in FINRA arbitration as one category of documents subject to a protective order, leading Sellers and the court to come to that conclusion. Buyers' conduct here constitutes discovery abuse. Sellers and the court relied on Buyers to argue with candor and correct any misimpressions that they had caused. "[T]he integrity of the civil litigation process depends largely on a client and counsel living by an 'honor code.'"[32] That requires documents at issue in litigation to be discussed openly and plainly so that the court can make efficient determinations.

Sellers are entitled to fees and costs, but only so much as to "deter repetition of the conduct or comparable conduct by others similarly situated."[33] The FINRA arbitration transcripts were not "fatal" to Buyers' indemnification claim, as Sellers

---

[31] *Bay Cap. Fin., LLC v. Barnes & Noble Educ., Inc.*, 2020 WL 1527784, at *11 (Del. Ch. Mar. 30, 2020) (internal quotation marks omitted) (quoting *Bader v. Fisher*, 504 A.2d 1091, 1096 (Del. 1986)).

[32] *Beck v. Atl. Coast PLC*, 868 A.2d 840, 856 (Del. Ch. 2005).

[33] Ct. Ch. R. 11(c)(4).

argue.[34]  But Buyers' lack of candor created unnecessary expenses, requiring Sellers to engage in motion practice three times to access documents that had no confidentiality designation and were not subject to any protective order.

As such, the court awards Sellers their reasonable fees and costs associated with litigating Sellers' motion to enforce the subpoena, Buyers' motion to quash the subpoena, Sellers' exception to the discovery magistrate's report, Sellers' emergency motion to compel, and Sellers' post-trial motion for sanctions.[35] Sellers are ordered to submit a form of order reflecting this award within seven business days.

IT IS SO ORDERED.

Sincerely,

*/s/ Kathaleen St. Jude McCormick*

Chancellor

cc:     All counsel of record (by *File & ServeXpress*)

---

[34] Pls.' Mot. for Sanctions ¶ 1.

[35] *See* Dkts. 50, 53, 152, 316, 325.