COURT OF CHANCERY
OF THE
STATE OF DELAWARE

CHRISTIAN DOUGLAS WRIGHT
MAGISTRATE IN CHANCERY

LEONARD L. WILLIAMS JUSTICE CENTER
500 NORTH KING STREET, SUITE 11400
WILMINGTON, DE 19801-3734

Date Submitted: May 12, 2026
Date Decided: June 10, 2026

Brian Gottesman, Esquire
Gabell Beaver LLC
162 Stone Block Row
Wilmington, DE 19807

Alisa E. Moen, Esquire
Moen Law LLC
5811 Kennett Pike
Wilmington, DE 19807

Kevin R. Shannon, Esquire
Christopher N. Kelly, Esquire
Daniel M. Rusk, IV, Esquire
Pam R. Schools, Esquire
Potter Anderson & Corroon LLP
1313 N. Market Street
Hercules Plaza, 6th Floor
Wilmington, DE 19801

Albert H. Manwaring, IV, Esquire
Bryan Townsend, Esquire
Alena V. Smith, Esquire
Morris James LLP
3205 Avenue North Boulevard
Suite 100
P.O. Box 2306
Wilmington, DE 19899

Re: *Patrick V. Judge v. Camber Road Partners, Inc., et al.*,
C.A. No. 2025-1217-CDW

Dear Counsel:

This letter addresses the three Rule 88 applications[1] filed by plaintiff's

counsel for fees and expenses incurred in connection with plaintiff's successful

---

[1] Dkts. 73–76 (collectively, "Applications").

motion to compel,[2] defendants' objection to the Applications,[3] and plaintiff's response.[4]

## I.     BACKGROUND

On April 20, 2026, I granted the Motion.[5]  The Motion concerned a single email withheld by defendants on grounds of privilege.[6]  Counsel for defendant Camber Road Partners, Inc. and its board of directors sent the email on April 18, 2025 to three of the four directors of Camber Road (the individual defendants in this case), but not to plaintiff, who was also a director.[7]  Defendants' first *three* privilege logs described the email as "Email from attorney to client regarding legal advice related to Board of Director strategies."[8]  Applying well-established case law, I held defendants could not

---

[2] Pl.'s Mot. to Compel, Dkt. 53 ("Motion" and cited as "Mot.").

[3] Defs.' Obj. to R. 88 Affs. of Alisa Moen, Esq., Brian Gottesman, Esq. and Daniel M. Rusk, IV, Esq. in Support of Att'ys' Fees and Costs, Dkt. 77 ("Objection" and cited as "Obj.").

[4] Pls.' Response to Defs.' Obj. to R. 88 Affs., Dkt. 82 ("Response").

[5] Order Granting Pl.'s Mot. to Compel, Dkt. 71 ("Order").

[6] Mot. ¶ 7.

[7] *See* Mot. Exs. 12 at row no. 24, 16 at row no. 24, 19 at row no. 23.

[8] *See id.*  It was not until defendants' fourth privilege log, filed contemporaneously with their opposition to the Motion, that defendants changed the description of the email to "legal advice related to dispute with Patrick Judge and proposed course of action."  *See* Dkt. 64 Ex. 22 at row no. 19.

assert privilege against plaintiff for that email and must produce it.[9] I also held, consistent with Court of Chancery Rule 37(a)(4)(A)'s mandatory language, that plaintiff was entitled to his reasonable fees and expenses incurred in bring the Motion and directed plaintiff's counsel to submit fee applications under Court of Chancery Rule 88.[10]

On April 27, plaintiff's counsel filed the Applications.[11] On May 4, defendants filed the Objection.[12] After some back and forth between the parties over the scope of the Objection, I granted plaintiff leave to file a limited response.[13] On May 12, plaintiff filed the Response.[14]

## II.    ANALYSIS

To begin, I decline plaintiff's invitation to find the Objection is an untimely motion for reargument on shifting fees.[15] True, defendants could have addressed plaintiff's request for fees in their opposition to the Motion, but chose only to address fees in the context of saying fees should be shifted in defendants' favor, consistent with defendants' position that the court should

---

[9] Order, cmts. 1–2.

[10] *Id.*, cmts. 2.

[11] *See* Dkt. 73 at 1; Dkt. 74 at 1; Dkt. 75 at 1.

[12] *See* Obj. at 1.

[13] *See* Dkts. 78–81.

[14] *See* Response at 1.

[15] Response ¶¶ 3–5.

deny the Motion.[16]  At the same time, Court of Chancery Rule 37(a)(4)(A) explicitly requires the court give the losing party "an opportunity to be heard," and I did not specifically invite argument on fee shifting during the April 2, 2026 hearing.  So in the exercise of my discretion I consider the Objection on its merits.

### A.    Defendants' Opposition Was Not Substantially Justified and Shifting Fees Is Not Unjust Under the Circumstances

Turning to those merits, because the court granted the Motion in full, Court of Chancery Rule 37 mandates fee shifting unless I find defendants' opposition was "substantially justified" or shifting fees would be unjust under the circumstances.  *See* Ct. Ch. R. 37(a)(4)(A).  Defendants, as the losing side, bear the burden.  *Bader v. Fisher*, 504 A.2d 1091, 1096 (Del. 1986).  Their objection is built around two contentions.  First, defendants say fee shifting is inappropriate here because they took their position in good faith.[17]  Second, defendants argue fee shifting would be unjust because there "was no prior Delaware case law directly on point" regarding this dispute.[18]  Neither contention passes muster.

---

[16] Defs.' Opp'n to Pl.'s Mot. to Compel ¶¶ 38–39, Dkt. 61

[17] Obj. ¶¶ 8–9.

[18] *Id.* ¶¶ 11–14.

As to defendants' first contention, a losing party's good faith by itself is not relevant under Rule 37(a)(4)(A). Obviously, good faith is required, but that is inherent whenever a party files a document in litigation. *See, e.g.*, Ct. Ch. R. 11(b). But it is not enough to say, as defendants do, that their opposition was not "vexatious, frivolous, or a willful or negligent violation of Defendants' discovery obligations."[19] *See Wileman v. Signal Finance Corp.*, 385 A.2d 689, 691 (Del. 1978) ("The cases cited by the plaintiff, holding that prejudice or willfulness is required in order for the Court to award attorney's fees upon failure to accord discovery, are inapposite."). As the court explained in *In re Appraisal of Dole Food Company*, a fee award under Rule 37 is not "a sanction for bad faith litigation conduct." 114 A.3d 541, 563 (Del. Ch. 2014). "It is simply the consequence contemplated by Rule 37 as part of an incentive structure intended by the drafters of the amended rule to limit the need for judicial intervention in discovery disputes." *Id.* Bad faith or vexatious conduct might also support fee shifting under the bad faith exception to the American Rule, *see Shawe v. Elting*, 157 A.3d 142, 149 (Del. 2017), but it is not necessary to shift fees under Rule 37(a)(4)(A).[20]

---

[19] *Id.* ¶ 14.

[20] *See also Foley v. Session Corp.*, 345 A.3d 537, 562 (Del. Ch. 2025) ("Rule 37 does not shift expenses as a sanction in the same sense as Rule 11 or an award under the bad faith exception to the American Rule. Rule 37 calls for presumptive expense

As to defendants' second contention, I reject the argument that the Motion involved a novel area of the law on which there is no good guiding authority. The Order discussed and applied well-established case law recognizing (1) a director's "essentially unfettered" right to company information, (2) directors' presumptive status as joint clients of their corporation's counsel, and (3) how a director's right to access privileged information can be curtailed.[21] I explained that Delaware law states that if a company is going to push a director outside the circle of confidentiality for privilege purposes, it is important "to have as clear a line of demarcation as possible."[22] And I explained why defendants had not met their burden to show sufficient adversity existed between the parties prior to April 18, 2025 to put plaintiff on clear notice he was outside the circle of confidentiality.[23] In short, I did not find the question to be as close as defendants argue it was.[24]

---

shifting to force parties to internalize the costs of their discovery positions which should reduce the number of discovery disputes.").

[21] Order, cmts. 1 (discussing, among other authorities, *Kalisman v. Friedman*, 2013 WL 1668205 (Del. Ch. Apr. 17, 2013); *Hyde Park Ventures P'rs Fund III, L.P. v. FairXchange, LLC*, 292 A.3d 178 (Del. Ch. 2023); and *In re Aerojet Rocketdyne Hldgs.*, 2022 WL 1446782 (Del. Ch. May 5, 2022)).

[22] *Id.*, cmts. 2 (quoting *In re Oxbow Carbon LLC*, 2017 WL 898380, at *1 (Del. Ch. Mar. 7, 2017)).

[23] *Id.* The parties had initially agreed on the date when plaintiff was adverse and outside the circle of confidentiality: May 22, 2025. *See* Mot. ¶ 20; *see also id.* Ex. 1 at 2–3. That was the day plaintiff resigned as an employee, but it was also,

### B. Plaintiff is Awarded the Fees Sought in the Applications

"Delaware law dictates that, in fee shifting cases, a judge determines whether the fees requested are reasonable." *Bruckel v. TAUC Hldgs., LLC*, 2023 WL 4583575, at \*17 (Del. Ch. July 17, 2023) (quoting *Mahani v. Edix Media Gp., Inc.*, 935 A.2d 242, 245 (Del. 2007)). In assessing reasonableness, "[t]he Court has broad discretion in determining the amount of fees and expenses to award." *Id.* (quoting *Black v. Staffieri*, 2014 WL 814122, at \*4 (Del. Feb. 27, 2014) (TABLE)). To assess reasonableness, the court considers the factors set forth in Rule 1.5(a) of the Delaware Lawyers' Rules of Professional Conduct. *See Mahani*, 935 A.2d at 245–46 (citing *All Pro Maids, Inc. v. Layton*, 2004 WL 1878784, at \*1 (Del. Ch. Sept. 18, 2020)); *see also* DEL. LAWYERS' R. PROF'L CONDUCT 1.5.

"Determining reasonableness does not require that this Court examine individually each time entry and disbursement" or "assess independently whether counsel appropriately pursued and charged for a particular motion, line of argument, area of discovery, or other litigation tactic." *Aveta v. Bengoa*, 2010 WL 3221823, at \*6 (Del. Ch. Aug. 13, 2010). Instead, the court may find

---

inconveniently for defendants, more than a month after company counsel sent the email.

[24] I acknowledge defendants cite cases in the Objection where the court declined to shift fees. *See* Obj. ¶ 9 nn.10–14. I have considered them and do not believe they require a different conclusion than I have reached here.

"[a] party's expenses are reasonable if they were actually paid or incurred, were thought prudent and appropriate in the good faith professional judgment of competent counsel, and were charged at rates, or on a basis, charged to others for the same or comparable services under comparable circumstances." *Gener8, LLC v. Castanon*, 2025 WL 88889, at *2 (Del. Ch. Jan. 14, 2025) (quoting *Weil v. VEREIT Operating P'ship, L.P.*, 2018 WL 834428, at *12 (Del. Ch. Feb. 13, 2018)).

The Applications here are in the usual form. Each signing attorney has certified (1) the amount incurred, (2) their review of the underlying invoices, (3) their judgment that the invoices are reasonable under Rule 1.5(a), and (4) their belief that the services rendered were prudent and appropriate in their professional judgment.[25] Combined, they seek a total award $85,172.50, representing approximately 103 hours of work by eight timekeepers.[26]

I do not fault defendants for questioning whether eight timekeepers were needed for the Motion, but the court generally tries not to second-guess staffing decisions. *See Aveta*, 2010 WL 3221823, at *8 ("For a Court to second-guess, on a hindsight basis, an attorney's judgment . . . is hazardous and should whenever possible be avoided.") (quoting *Arbitrium (Cayman Islands) Handels*

---

[25] *See* Dkt. 73 ¶¶ 3–5; Dkt. 74 ¶¶ 3–5; Dkt. 75 ¶¶ 3–5.

[26] *See* Dkt. 73 Ex. A; Dkt. 74 Ex. A; Dkt. 76.

*AG v. Johnston*, 1998 WL 155550, at *4 (Del. Ch. Mar. 30, 1998)). Here, I see no reason to engage in the kind of second-guessing defendants want me to do.

Two of the six attorney timekeepers appear to have performed most of the work (64% of the hours), and the billing rates involved suggest that the work was not being inappropriately shifted up the chain in order to inflate fee amounts.[27] Plaintiff sent only three of the attorney timekeepers to oral argument—those who did 73% of the work on the Motion—and the one support staff member identified in the "[p]repare for and attend oral argument" portion of one exhibit did not even bill for half the length of the argument.[28] As for defendants' complaint that plaintiff's counsel at Potter Anderson & Corroon LLP spent an unreasonable amount of time on the Motion, including preparing for argument,[29] defendants do not suggest how much time would be reasonable nor do they offer any information regarding their own counsel's work on the Motion.[30]

---

[27] *See* Dkt. 73 Ex. A; Dkt. 74 Ex. A; Dkt. 76.

[28] *See* Dkt. 73 Ex. A; Dkt. 76. Defendants sent two attorney timekeepers. *See* Dkt. 67.

[29] Obj. ¶ 20.

[30] *See Auriga Cap. Corp. v. Gatz Props.*, 40 A.3d 839, 882 n.184 (Del. Ch. 2012) (awarding fees under the bad faith exception to the American Rule and stating "[u]nless [defendant's] counsel fully produces their own billing records in full in support of an argument that the [plaintiffs'] bills are too high, I shall consider the [plaintiffs'] amount sought to be reasonable."); *Ensing v. Ensing*, 2017 WL 880884,

Considering the factors set forth in Rule 1.5(a) of the Delaware Lawyers' Rules of Professional Conduct, I find the fees are reasonable. The fees sought are within the range of what a party reasonably could incur in connection with a hard-fought discovery motion, and when plaintiff filed the Motion he did not know if he would be able to shift his fees and expenses to defendants. Counsel's representation required skill, the Motion was successful, and counsel are experienced, reputable, and capable attorneys. *See Aveta*, 2010 WL 3221823, at *6; DEL. LAWYERS' R. PROF'L CONDUCT 1.5(a).

### III.    CONCLUSION

Defendants have not shown that their opposition to the Motion was substantially justified or that there are other reasons it would be unjust to award plaintiff those fees and expenses. Defendants have also not shown that the fees and expenses are unreasonable in the manner Delaware law contemplates.

---

at *12 n.136 (quoting *Auriga*); *Feeley v. NHAOCG, LLC*, C.A. No. 7304-VCL, at 70–71 (Del. Ch. Sept. 26, 2012) (TRANSCRIPT) ("[I]t's a goose-gander issue . . . . [I]f you're going to challenge reasonableness, how much [did] you guys spend? And if there's not a gross disparity, that's great evidence that what you did is reasonable."); The court also applies this principle in advancement cases. *See, e.g.*, *Tarriff v. Eagle Pharma., Inc.*, C.A. No. 2024-1189-NAC, at 26–27 (Del. Ch. Jan. 8, 2025) (TRANSCRIPT) (quoting *Feeley* and requiring production of invoices); *Davis v. EMSI Hldg. Co.*, 2017 WL 2290061, at *2 (Del. Ch. May 24, 2017) (ORDER) ("In the event Defendant challenges the reasonableness of Plaintiffs' fees and expenses, the Court may require that Defendant produce its own billing records in full[.]"); *Dunlap v. Sunbeam Corp.*, 1999 WL 413299, at *1 (Del. Ch. June 7, 1999) ("[E]vidence of fees and expenditures of other parties may be relevant to the issue of the reasonableness of the petitioner's fees[.]") (citation omitted).

Considering the factors set forth in Rule 1.5(a) of the Delaware Lawyers' Rules of Professional Conduct, I conclude the fees are reasonable. I award plaintiff the full amount sought by the Applications, $85,172.50.

This is a Report under Court of Chancery Rule 144(b)(1). Under Court of Chancery Rule 144(c)(2)(A), exceptions to this Report are stayed pending issuance of a Final Report in this case.

Very truly yours,

/s/ *Christian Douglas Wright*

Magistrate in Chancery